UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHRISTY A. BUTIGAN,                    )
    Plaintiff,                         )
                               )
          v.                         )   Civil Action No. 1:13cv514
                               )
SALAH MOHAMMED K. A.                   )
AL-MALKI, et al.,                      )
    Defendants.                        )

REPORT AND RECOMMENDATION

    This matter comes before the Court on Motion for Default
Judgment by plaintiff Christy A. Butigan ("plaintiff") against
defendants Salah Mohammed K. A. Al-Malki and Salwa Awad M. Saeed
("defendants").  (Dkt. 23.)  After a representative for
defendants failed to respond to plaintiff's Motion or to appear
at the hearing on February 14, 2014, the undersigned Magistrate
Judge took this matter under advisement.[1]

INTRODUCTION

**I. Background**

    Plaintiff is a 31-year-old Filipino woman who was
trafficked through Qatar into the United States and forced to

---

[1] The record before the Court includes the Complaint (Dkt. 1),
plaintiff's Motion for Extension of Time to Accomplish Service
and for Order Authorizing Alternate Service (Dkt. 10),
plaintiff's Motion for Default Judgment ("Mot. Def. J.") (Dkt.
23), plaintiff's Memorandum in Support of Motion for Default
Judgment ("Mem. Supp. Mot. Def. J.") (Dkt. 24), the Affidavit of
Erica Morin ("Morin Aff.") (Dkt. 24-1), the Affidavit of Christy
A. Butigan ("Butigan Aff.") (Dkt. 24-2), and all attachments and
exhibits submitted with those filings.

work excessive hours for meager wages by defendants Salah
Mohammed K. A. Al-Malki ("defendant Al-Malki") and Salwa Awad M.
Saeed ("defendant Saeed"), husband and wife.  (Compl. ¶ 1.)
Plaintiff had previously lived with her husband, two children,
mother-in-law, and mother in the Philippines, and decided to
travel abroad to work as a domestic servant so that she could
earn money to send back her family.  (Id. at ¶¶ 2-3.)  Plaintiff
therefore traveled to Qatar to work for defendants from
September 10, 2010, until December 9, 2010.  (Id. at ¶¶ 4-5,
22.)

Defendants moved to the United States in late 2010 pursuant
to defendant Al-Malki's position as the Medical Attaché for the
Embassy of Qatar in Washington, D.C.  (Id. at ¶ 23.)  Defendants
trafficked plaintiff to the U.S. under a fraudulently obtained
visa, and confiscated plaintiff's passport and visa upon her
arrival.  (Id. at ¶¶ 7-8.)  From December 10, 2010, until April
27, 2011, defendants forced her to work 17 hours per day, seven
days a week, for approximately $0.75 per hour.  (Id. at ¶¶ 8,
22.)  They prohibited her from leaving the house or speaking to
others in public, and subjected her to constant emotional and
verbal abuse.  (Id.)  Plaintiff escaped from defendants on April
27, 2011.  (Id. at ¶¶ 12-13.)

Plaintiff brings this action pursuant to the Trafficking
Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§

2

1589 and 1590, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Virginia state law.  (Id. at ¶ 14.)

## II. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  The court must have both subject matter and personal jurisdiction over a defaulting party before it can render default judgment.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff's allegations concern the TVPRA, 18 U.S.C. §§ 1589 and 1590, and the FLSA, 29 U.S.C. § 201, *et seq.*  This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy and share a common nucleus of operative fact with her federal law claims.  Therefore, federal question subject matter jurisdiction exists.

This Court has personal jurisdiction over defendants because they conducted business in the Commonwealth of Virginia. (Compl. ¶¶ 22-25.)  Specifically, defendants employed plaintiff to work as a domestic servant in Virginia from December 10, 2010, until April 27, 2011.  (Id. at ¶ 22.)  Therefore, personal jurisdiction is proper.

Venue is proper pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. § 1391(c)(3) because defendants do not reside in the United States.  (Compl. ¶ 1.)

### III. Service of Process

As a general rule, a defendant must be served with the summons and complaint filed with the court.  Fed. R. Civ. P. 4. Proof of service on a defendant outside the United States may be shown "by receipt by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."  Fed. R. Civ. P. 4(f)(3).  In determining whether the service requirements have been met, courts in the Fourth Circuit emphasize that the technical requirements of service should be construed liberally as long as the defendant has actual notice of the pending suit.  Karlsson v. Rabinowitz, 318 F.2d 666, 668-69 (4th Cir. 1963).

After initiating this action on April 26, 2013, plaintiff, through counsel, took several steps to locate and serve defendants, including identifying a P.O. Box address in Qatar for defendant Al-Malki.  (Mem. Supp. Mot. Def. J. 5; Morin Aff. ¶ 8.)  On August 19, 2013, plaintiff attempted service by mailing copies of the Summons and Complaint, with Arabic translations, to defendants at the Embassy of Qatar in Washington, D.C. and to defendants' P.O. Box in Qatar pursuant

4

to Federal Rule of Civil Procedure 4(f)(2)(C)(ii).  (Mem. Supp. Mot. Def. J. 5; Morin Aff. ¶ 9; Dkts. 24-4 & 24-5.)  The materials sent to the Embassy of Qatar received delivery confirmation, but those sent to Qatar were returned as unclaimed.  (Id.)

On August 21, 2013, plaintiff moved for an Order authorizing alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3).  (Dkts. 10 & 10-1.)  The Court granted that motion on August 27, 2013, and required plaintiff to serve defendants by December 26, 2013.  (Dkt. 12.)  Pursuant to that Order, plaintiff twice mailed the Summons and Complaint, along with Arabic translation, via international mail to defendants' P.O. Box in Qatar.  (Mem. Supp. Mot. Def. J. 6; Morin Aff. ¶¶ 12-18; Dkts. 24-6, 24-7 & 24-8.)  Those mailings were returned one month later as unclaimed.  (Id.)

Plaintiff next sent the materials to defendants via courier from Dubai to Qatar.  (Mem. Supp. Mot. Def. J. 6; Morin Aff. ¶¶ 19-20; Dkt. 24-9.)  The courier service contacted defendant Al-Malki through a known telephone number, arranged to deliver the package containing service, and delivered the package on December 13, 2013, to defendant Al-Malki, who accepted and signed for the package.  (Id.)

Plaintiff provided ample notice to defendants of this action.  Plaintiff served defendant Al-Malki in accordance with

5

this Court's Order of August 27, 2013, by twice mailing the
Summons and Complaint via international mail, and later served
the papers on defendant Al-Malki directly through a courier.
(Mem. Supp. Mot. Def. J. 8-9; Morin Aff. ¶¶ 12-20.)  Defendant
Saeed was also on notice of this action both because of
plaintiff's numerous mailings, and because plaintiff effectively
served her spouse.  See Cumberlander v. KCL Site Servs., LLC,
No. 08-cv-994, 2009 WL 4927144, at *5-6 (E.D. Va. Dec. 17, 2009)
(finding service was proper when materials were delivered to
wife of a corporate defendant's agent and defendant knew about
the action); Pa. Higher Educ. Assistance Agency v. Vu, No. 12-
cv-1415, 2013 WL 1856105, at *1 (E.D. Va. Apr. 10, 2013)
(finding service was proper when materials were left with
defendants' wife at his home address).  Therefore, because of
plaintiff's compliance with this Court's Order and the other
measures taken to provide defendants with notice, service was
proper pursuant to Federal Rule of Civil Procedure 4.[2]

---

[2] In total, plaintiff sent defendants (1) a letter prior to the
filing of the Complaint notifying them of her intent to file
suit; (2) three mailings to their Qatari address; (3) copies of
the materials via courier, which were signed for by defendant
Al-Malki; (4) a letter after the entry of default notifying them
of her intent to move for default judgment; and, (5) materials
to the Ambassador of Qatar in Washington, D.C.  (Mem. Supp. Mot.
Def. J. 9, n. 4; Morin Aff. ¶¶ 6, 9, 11-20, 23.)

## IV. Grounds for Default Judgment

Plaintiff filed this action on April 26, 2013.  (Dkt. 1.)
To date, no defendant has appeared or otherwise participated in
these proceedings.  On January 8, 2014, the Clerk of this Court
entered default pursuant to plaintiff's Request for Entry of
Default and Federal Rule of Civil Procedure 55.  (Dkt. 22.)
Plaintiff filed her Motion for Default Judgment (Dkt. 23) and a
Memorandum in Support of Motion for Default Judgment (Dkt. 24)
on January 24, 2014.  After defendants failed to appear at the
hearing on plaintiff's Motion for Default Judgment on February
14, 2014, the undersigned took this matter under advisement.
(Dkt. 26.)

### FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned
Magistrate Judge finds that plaintiff established the following
facts.

Plaintiff is a citizen of the Republic of the Philippines,
and defendants, husband and wife, are citizens and residents of
Qatar.  (Compl. ¶¶ 22-24.)  At the time of the events giving
rise to this action, defendant Al-Malki was the Medical Attaché
for the Embassy of Qatar in Washington, D.C., and lived with his
wife, defendant Saeed, in Vienna, Virginia.  (Id. at ¶ 23.)

Plaintiff applied for a domestic worker position in late
2009 or early 2010 after hearing a radio advertisement by an

employment agency based in the Philippines that specializes in placing workers in Dubai, Qatar, and Kuwait. (Id. at ¶ 27.) Plaintiff traveled to the agency's Manila office on August 9, 2010, where she received training and signed a contract to work for $400 per week for two years as a domestic servant for a family in Qatar. (Id. at ¶¶ 28-29.) Pursuant to that contract, plaintiff traveled to Qatar on September 10, 2010. (Id. at ¶¶ 30-32.)

Upon her arrival, plaintiff's passport and identification documents were taken from her and remained in possession of defendants. (Id. at ¶ 33.) In Qatar, defendant Saeed forced plaintiff to work from 5:00 a.m. until midnight, seven days a week, for meager pay and without any time off. (Id. at ¶ 34.) Defendants subjected plaintiff to constant verbal abuse, and only permitted her to eat once a day. (Id. at 35.) Plaintiff told defendant Saeed several times that she wanted to return to the Philippines, but defendant Saeed would not permit her to leave unless she paid all travel and training expenses, which plaintiff could not afford. (Id. at ¶ 37.)

In October 2010, defendant Al-Malki returned to Qatar from his diplomatic post in the United States and arranged for his family and plaintiff to move with him to the United States. (Id. at ¶¶ 39-40.) Pursuant to these arrangements, defendant Al-Malki provided plaintiff with a new contract stipulating that

8

she would be paid $1,500 per month, including health benefits and a food allowance, to work for six hours a day, six days a week, plus an overtime rate of $10 per hour and double pay on holidays. (Id. at ¶ 40.) Defendant Al-Malki brought plaintiff to the U.S. Embassy in Qatar for visa processing, and provided the Embassy with plaintiff's employment contract to ensure that it complied with U.S. law. (Id. at ¶¶ 41-42.) Defendants then trafficked plaintiff from Qatar to the United States on December 10, 2010, and seized her passport and other identification documents upon arrival. (Id. at ¶ 43.)

While in the United States, plaintiff worked at defendants' home from 8:00 a.m. until late at night, seven days a week, without any time off. (Id. at ¶ 44.) Defendants regularly ridiculed and insulted plaintiff, forced her to sleep on the floor, fed her meager rations, and refused to provide plaintiff access to needed dental care. (Id. at ¶¶ 45-49.) Furthermore, defendants isolated plaintiff and confined her to their home by restricting her movements, confiscating her travel and identification documents, and refusing to allow her to communicate with the outside world. (Id. at ¶¶ 52-56.) Though plaintiff wanted to leave defendants' home and return to her family in the Philippines, defendants foreclosed any possibility of her departure by requiring plaintiff to pay defendants far more money than was affordable based on her wages. (Id. at ¶

9

57.)  For her five months' labor in the United States, during which she worked 17 hours a day, seven days a week, defendants paid her approximately $1700.  (Id. at ¶ 51.)

On April 27, 2011, after returning from a weekend trip, defendants discovered that plaintiff had used defendants' telephone to call home to the Philippines without their permission.  (Id. at ¶ 60.)  Defendants chastised and yelled at plaintiff, and defendant Saeed raised her hand to strike plaintiff.  (Id. at ¶ 60.)  She was prevented from doing so only when defendant Al-Malki stepped between them.  (Id.)  After this confrontation, plaintiff fled the home, obtained help from a neighbor, and contacted various organizations that provide social services and pro bono legal services.  (Id. at ¶¶ 62-65.)

Defendants have attempted to track plaintiff down since her escape in April 2011.  (Id. at ¶ 66.)  They have contacted family and friends for information regarding her whereabouts, and called her family in the Philippines on at least two occasions demanding information about plaintiff's location.  (Id. at ¶ 67.)  In August 2011, defendants called the house where plaintiff had taken shelter, but plaintiff did not answer the phone.  (Id. at ¶ 68.)  Plaintiff, fearful that defendants may attempt to extract revenge, filed this suit on April 26, 2013.  (Id. at ¶¶ 69-70; Dkt. 1.)

Plaintiff alleges 13 counts[3] in her Complaint: (1) forced labor in violation of the TVPRA, 18 U.S.C. §§ 1589(a), 1595; (2) involuntary servitude in violation of TVPRA, 18 U.S.C. §§ 1584, 1595; (3) trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of the TVPRA, 18 U.S.C. §§ 1590, 1595; (4) unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of the TVPRA, 18 U.S.C. §§ 1592, 1595; (5) benefiting financially from trafficking in persons in violation of the TVPRA, 18 U.S.C. §§ 1593A, 1595; (6) conspiracy to violate TVPRA, 18 U.S.C. §§ 1589, 1590, 1595, 1594, 1595; (7) failure to pay minimum wage in violation of the FLSA, 29 U.S.C. §§ 206, 216; (8) false imprisonment; (9) breach of contract; (10) fraudulent misrepresentation; (11) intentional infliction of emotional distress; (12) assault; and, (13) punitive damages/special damages. Plaintiff brings the assault claim only against defendant Saeed, and all other claims against both defendants.

## EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the

---

[3] Plaintiff inadvertently alleges a Count XII and a Count XIV, but not a Count XIII. (Compl. ¶¶ 35-36.)

plaintiff's complaint to ensure that the complaint properly states a claim.  GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).  As such, it is appropriate to evaluate plaintiff's claim against the standards of Fed. R. Civ. P. 12(b)(6).

**A.   Counts 1 Through 6: Trafficking Victims Protection Act**

Plaintiff's Complaint alleges facts sufficient to demonstrate defendants' liability under all six counts brought pursuant to the TVPRA, 18 U.S.C. §§ 1581, *et seq.*  Each is addressed in turn.

First, plaintiff properly alleges a forced labor claim under both subsections (a) and (b) of 18 U.S.C. § 1589.  A defendant is liable under subsection (a) when he or she "knowingly provides or obtains the labor or service of a person" through the following:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person[4];

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or

---

[4] See 18 U.S.C. § 1589(c)(2) (defining "serious harm" to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm").

> another person would suffer serious harm or physical
> restraint.

18 U.S.C. § 1589(a).  Similarly, subsection (b) states that

> (b) Whoever knowingly benefits, financially or by
> receiving anything of value, from participation in a
> venture which has engaged in the providing or
> obtaining of labor or services by any of the means
> described in subsection (a), knowing or in reckless
> disregard of the fact that the venture has engaged in
> the providing or obtaining of labor or services by any
> of such means, shall be punished as provided in
> subsection (d).

18 U.S.C. § 1589(b).

Here, plaintiff's Complaint provides ample facts to show that defendants are liable under subsections (a) and (b) of 18 U.S.C. § 1589.  In particular, defendants' actions included confiscating travel documents (Compl. ¶¶ 4, 8-9, 30-33, 43, 46); presenting fraudulent documents to obtain plaintiff's U.S. visa (id. at ¶¶ 40-42); confining her to defendants' homes in Qatar and Virginia (id. at ¶¶ 5, 8-10, 14, 44-56); financially threatening her (id. at ¶¶ 5, 37, 57-59); berating her, attempting to strike her, and causing her to fear for her safety (id. at ¶¶ 9, 11, 38, 44-45, 51, 54, 60-61); tracking her down after her escape (id. at 12, 66-68); and threatening further harm if she left her employment (id. at ¶¶ 5, 37-38, 57, 59, 61, 69; Mem. Supp. Mot. Def. J. 10-12).  Therefore, plaintiff sufficiently shows defendants' liability under 18 U.S.C. § 1589(a)-(b).

13

Second, plaintiff demonstrates that defendants are liable under Count 3, violation of 18 U.S.C. § 1590.  This section of the TVPRA imposes separate liability for one who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." Id.; Shukla v. Sharma, No. 07-cv-2972, 2012 WL 481796, at *14 (E.D.N.Y. Feb. 14, 2012) (determining that liability for trafficking is separate from liability for forced labor or involuntary servitude).  This claim generally requires some conduct that occurs abroad.  See Tanedo v. E. Baton Rouge Parish Sch. Bd., No. CV10-1172, 2012 WL 5378742, at *7 (C.D. Cal. Aug. 27, 2012).

Here, defendants are liable under 18 U.S.C. § 1590 because they knowingly recruited plaintiff's services through an employment agency in the Philippines, brought her to Qatar, and arranged to transport her to the United States by fraudulently acquiring a visa for the purpose of forced labor or involuntary servitude.  (Compl. ¶¶ 3-8, 27-31, 39-41; Mem. Supp. Mot. Def. J. 12.)  Therefore, plaintiff's Complaint sufficiently demonstrates defendants' liability pursuant to 18 U.S.C. § 1590.

Third, plaintiff properly alleges a claim under Count 4, unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced

14

labor in violation of the TVPRA, 18 U.S.C. § 1592(a).[5]

Defendants confiscated, possessed, and concealed plaintiff's

passport and identification documents upon her arrival in Qatar,

and only briefly allowed her to use those documents to gain

entry into the U.S.  (Compl. ¶¶ 4, 8-9, 30-33, 43, 63.)  This

conduct occurred in the course of committing forced labor and

involuntary servitude violations, and was done with the

intention of preventing or restricting plaintiff's ability to

leave defendants' residences.  (Id.)  Therefore, Count 4 is

properly alleged.

---

[5] This portion of the TVPRA, 18 U.S.C.A. § 1592(a), states:

   (a)  Whoever  knowingly  destroys,  conceals,  removes,
   confiscates,  or  possesses  any  actual  or  purported
   passport  or  other  immigration  document,  or  any  other
   actual  or  purported  government  identification
   document, of another person—

   (1)  in  the  course  of  a  violation  of  section  1581,
   1583, 1584, 1589, 1590, 1591, or 1594(a);

   (2)  with  intent  to  violate  section  1581,  1583,  1584,
   1589, 1590, or 1591; or

   (3)  to  prevent  or  restrict  or  to  attempt  to  prevent  or
   restrict,  without  lawful  authority,  the  person's
   liberty  to  move  or  travel,  in  order  to  maintain  the
   labor  or  services  of  that  person,  when  the  person  is
   or  has  been  a  victim  of  a  severe  form  of  trafficking
   in  persons,  as  defined  in  section  103  of  the
   Trafficking Victims Protection Act of 2000,
   shall  be  fined  under  this  title  or  imprisoned  for  not
   more than 5 years, or both.

Fourth, plaintiff alleges Count 2, involuntary servitude in violation of the TVPRA, 18 U.S.C. § 1584, in the alternative to her forced labor claim (Count 1). This portion of the statute allows plaintiff to hold liable a defendant who "knowingly and willfully holds to involuntary servitude" any person. 18 U.S.C. § 1584(a). Plaintiff's Complaint shows that defendants knowingly and willfully lured plaintiff to the U.S. through Qatar for the purposes of holding her to involuntary servitude, and intended to cause plaintiff to believe that she would suffer serious harm, physical restraint, or the abuse of legal process if she refused to work. (Compl. ¶¶ 4-5, 8-10, 14, 30-33, 40-61.) Therefore, plaintiff properly alleges Count 2.

Fifth, plaintiff pleads Count 5, benefiting financially from trafficking in persons in violation of the TVPRA, 18 U.S.C. § 1593A, in the alternative to her forced labor claim (Count 1). This portion of the TVPRA states that

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section 1581(a), 1592, or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section.

18 U.S.C.A. § 1593A. Plaintiff shows that defendants knowingly benefited from their participation in the trafficking venture that violated the TVPRA by receiving plaintiff's labor for

meager wages.  (Compl.  ¶¶ 4-5, 8-10, 14, 30-33, 40-61.)
Defendants' actions therefore violated 18 U.S.C. § 1593A.

Finally, plaintiff sufficiently states a conspiracy claim
pursuant to 18 U.S.C. § 1594(b).  Under this provision,
"whoever conspires with another to violate section 1581, 1583,
1589, 1590, or 1592 shall be punished in the same manner as a
completed violation of such section."  18 U.S.C. § 1594(b).  The
facts show that defendant Al-Malki conspired with defendant
Saeed to violate the TVPRA by agreeing to obtain plaintiff's
services for the purpose of forced labor, involuntary servitude,
and trafficking.  See supra 12-16.  Defendants, as members of
this conspiracy, are thus liable under this TVPRA provision.

## B.  Count 7: Fair Labor Standards Act

Plaintiff's Complaint properly alleges a claim under the
FLSA, 29 U.S.C. §§ 201, *et seq.*  The FLSA mandates that
employees, including individuals serving as domestic workers in
a household, be paid a minimum wage of at least $7.25 per hour
for all hours worked.[6]  29 U.S.C. §§ 206 & 216(b).  To establish
a violation of the FLSA for non-payment of minimum wage under 29
U.S.C. § 206, a plaintiff must show that: (1) plaintiff was

---

[6] Plaintiff is not entitled to overtime pay under the FLSA
because the maximum hour requirements exclude a domestic service
employee who resides in the household where she is employed.  29
U.S.C. § 207(b)(21).

employed by the defendant; (2) plaintiff was engaged in commerce or in the production of goods for commerce; (3) plaintiff was not compensated for all hours worked during each work week at a rate equal to or greater than the applicable minimum wage; and, (4) none of the exemptions in 29 U.S.C. § 213 apply to plaintiff's position.  29 U.S.C. § 206.

Here, plaintiff's Complaint satisfies all elements of this claim.  The FLSA specifically recognizes domestic service work, such as that performed by plaintiff, as covered by the statute. 29 U.S.C. § 206(f).  Defendants were employers under 29 U.S.C. § 203(d) and plaintiff qualified as an employee under 29 U.S.C. § 203(e) because defendants hired plaintiff to work in their private residences on the promise of an exchange of payment in return for her services.  (Compl. ¶¶ 7-9, 14, 43-44, 50-57.) Defendants paid plaintiff a total of $1700 for plaintiff's 138 days of work in the United States during which she worked 17 hours a day.[7]  (Compl. ¶¶ 8, 44, 51.)  This amount equaled roughly $0.75 per hour—well below the minimum wage rate of $7.25

---

[7] An employee's total hours worked can be established by a reasonable estimate of hours worked and compensation received. See Osias v. Marc, 700 F. Supp. 842, 844 (D. Md. 1998) (finding that employees' anecdotal and imprecise evidence was "reasonably accurate enough to substantiate" the hours worked); Lopez v. Lawns 'R' Us, Civ. No. DKC 07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) ("An employee's testimony as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed.").

per hour.  As explained in previous sections, defendants'
failure to pay was knowing and willful, and no evidence has been
produced to show that any of the exemptions listed in 29 U.S.C.
§ 213 apply to plaintiff.  Therefore, plaintiff is a covered
employee under the FLSA and entitled to recover lost wages.

**B.   Counts 8, 9, 10, 11, 12: Virginia State Law Claims**

Plaintiff's Complaint also alleges five counts under
Virginia state law.  She does not specifically seek damages
under these claims, as her injures under the state law claims
arise out of the same conduct and actions as her TVPRA and FLSA
claims.  (Mem. Supp. Mot. Def. J. 25.)  Nonetheless, her
Complaint sets forth sufficient facts to demonstrate defendants'
liability on these counts.

Plaintiff properly alleges Count 9, a breach of contract
claim, in the alternative to her FLSA claim.  (Mem. Supp. Mot.
Def. J. 16.)  Plaintiff shows that, pursuant to the parties'
U.S. contract, defendants owed her $1500 per month for six hours
of work per day, six days a week, and $10 per hour for overtime.
(Mem. Supp. Mot. Def. J. 25; Butigan Aff. ¶ 17.)  Plaintiffs
breached this legally enforceable obligation by failing to honor
the terms of that contract, thereby causing plaintiff damages.
(Mem. Supp. Mot. Def. J. 16; Compl. ¶¶ 7-8, 39-42, 50-51.)

Plaintiff states facts sufficient to establish defendants'
liability under Count 10, fraudulent misrepresentation.  Her

Complaint shows that defendants intentionally and knowingly made false representations of material fact about the conditions of her employment so as to mislead her to come the United States on the empty promise of high wages.  (Mem. Supp. Mot. Def. J. 16-17; Compl. ¶¶ 2-3, 5-8, 29-44, 44-57.)  Plaintiff reasonably relied on those misrepresentations, and suffered damages by being forced to work for meager pay under terrible conditions.  (Id.)  Plaintiff's damages would include the unpaid contract amount.  See Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994) (damages for fraud based on the "resulting damage to the party mislead").  This Count is properly pled.

Count 8, false imprisonment, is properly alleged by plaintiff in the alternative to her forced labor and involuntary servitude claims.  (Mem. Supp. Mot. Def. J. 17.)  Plaintiff demonstrated that defendants intentionally restricted her freedom, movement, and physical liberty without legal right by confining her to their Virginia residence.  (Mem. Supp. Mot. Def. J. 17; Compl. ¶¶ 4-5, 8-9, 12, 30-31, 33, 37, 43, 52-59.)  Defendants accomplished this restraint through the use of force, words, and acts, including confiscating her identification documents and threatening that she would owe them a substantial amount of money if she left.  (Id.)  Plaintiff thus sufficiently states a claim for false imprisonment.

Plaintiff's Complaint shows facts sufficient to support

20

Count 11, intentional infliction of emotional distress.  She establishes that defendants' conduct in trafficking and subjecting her to forced labor was intentional, outrageous, and intolerable such that it offends generally accepted standards of decency and morality.  (Mem. Supp. Mot. Def. J. 17-18; Compl. ¶¶ 3-9, 11-12, 27-33, 39-43, 49, 52-57, 60-63.)  Additionally, defendant Saeed regularly berated her, accused her of being dirty because she was Christian, verbally attacked her, denied her medical and dental treatment, and attempted to hit her. (Id.)  This caused plaintiff to suffer severe emotional distress, including feeling afraid, humiliated, embarrassed, and ashamed.  (Id.)  Plaintiff is entitled to damages under Virginia law for this tort.  See Samuel v. Rose's Stores, Inc., 907 F. Supp. 159, 164 (E.D. Va. 1995).  The elements of this Count have therefore been met.

Finally, plaintiff properly alleges an assault claim against defendant Saeed.  See Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003).  She demonstrates that, on April 27, 2013, defendant Saeed intended to cause harmful or offensive contact when she raised her hand in an attempt to hit plaintiff before being stopped by defendant Al-Malki.  (Mem. Supp. Mot. Def. J. 19; Compl. ¶¶ 59-61.)  Plaintiff reasonably believed or feared that defendant Saeed intended to strike her.  (Compl. ¶¶ 9, 11, 32, 44-45, 51, 54, 59-61.)  This claim is sufficiently pled.

21

REQUESTED RELIEF

Plaintiff moves for compensatory damages, punitive damages, and reasonable attorneys' fees for the claims asserted in her Complaint. She seeks $133,667 in compensatory damages, constituting (1) restitution damages of $30,617 as compensation for the value of her services as guaranteed under the FLSA, and (2) emotional distress damages of $103,050 for defendants' multiple TVPRA violations. (Mem. Supp. Mot. Def. J. 20-21.) Plaintiff also seeks $400,000 in punitive damages. (Id. at 23.) At this time, plaintiff does not move for damages on her state law claims, as they would be duplicative of the TVPRA claims, or for a specified amount of attorneys' fees.[8] (Id. at 25.)

## I.   Compensatory Damages: Restitution

Plaintiff moves for $30,617 in restitution damages under her TVPRA claims, which includes $15,308.50 in unpaid minimum wages and $15,308.50 in liquidated damages. (Mem. Supp. Mot. Def. J. 20.) Restitution for a trafficking victim requires, at a minimum, compensation for the value of her services as guaranteed under the FLSA. 18 U.S.C. § 1593(b)(3). The FLSA provides that "[a]ny employer who violates [the Act] shall be

---

[8] Plaintiff's attorneys' fees are recoverable under both the TVPRA and FLSA. 18 U.S.C. § 1595 & 29 U.S.C. § 216(b). However, as plaintiff does not now move for a specific amount of attorneys' fees, the Court will withhold judgment based on this relief. Plaintiff may later move for a monetary award based on those claims if so desired.

liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overpaid compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Defendants are therefore liable to plaintiff for her unpaid minimum wages at the current rate of $7.25 per hour plus an equal amount of liquidated damages.

Plaintiff worked every day for defendants in their Virginia home from December 10, 2010, until April 27, 2011, for approximately 17 hours per day. (Butigan Aff. ¶¶ 21-23, 33, 38-40.) For these 138 consecutive days of work, defendants paid plaintiff, at most, $1700.[9] (Id. at ¶¶ 22, 33.) Therefore, plaintiff is entitled to her unpaid minimum wages of $17,008.50, less the $1700 paid to her, for a total amount of $15,308.50. Plaintiff is further entitled to an equal amount of liquidated damages. Therefore, the undersigned finds that plaintiff is entitled to restitution damages in the total amount of $30,617.

## II.  Compensatory Damages: Emotional Distress

Plaintiff seeks $450 per day for the severe emotional distress caused by defendants' forced labor or involuntary servitude and trafficking violations. (Mem. Supp. Mot. Def. J. 21-22.) The TVPRA permits a plaintiff to recover emotional

---

[9] Defendant Saeed occasionally deducted $40 per month from plaintiff's wages for spoiled food. (Compl. ¶ 27.)

distress awards for different TVPRA violations.  See Shukla, 2012 WL 481796, at *14 (awarding separate damages for the forced labor and trafficking).  In determining such damages, courts look to "all relevant circumstances . . ., including sex, age, condition in life and any other fact indicating susceptibility of the injured person to [the] type of harm."  Mazengo v. Mzengi, No. 07-756, 2007 WL 8026882, at *7 (D.D.C. Dec. 20, 2007).  Plaintiffs have been awarded damages for emotional distress from trafficking subject to forced labor ranging from $410 to $780 per day.  See, e.g., Doe v. Howard, No. 1:11-cv-1105, 2012 WL 3834867, at *3-4 (E.D. Va. Sept. 4, 2012) (awarding $500 per day for three months' forced labor); Gurung v. Malhotra, No. 10-cv-5086 (S.D.N.Y. Mar. 16, 2014) (awarding $410 per day for 40 months' forced labor); Shukla, 2012 WL 481796, at *8-9 (awarding $780 per day for three and a half years' forced labor).

Here, the relevant circumstances concerning plaintiff's sex, age, condition in life, and susceptibility to harm justify plaintiff's request of damages of $450 per day.  Defendants' behavior included, but was not limited to, causing plaintiff's constant fear (Butigan Aff. ¶¶ 12, 14-16, 23, 26, 28, 35-36, 38-39, 42-46); confining her to defendants' homes (id. at ¶¶ 10, 14-16, 24-25, 35); subjecting her to grueling work days (id. at 13, 23, 32); constantly yelling at her, denying her food, and

24

ridiculing her (id. at 14, 26-28, 30, 38); and confining her for 91 days in Qatar and for 138 days in the United States (id. at 16, 35).  Plaintiff continues to live in fear of what defendants will do if their attempts to track her down are successful. (Id. at 44-46.)  Considering this egregious conduct and plaintiff's understandable severe emotional distress, the undersigned finds that plaintiff's request of $450 per day for emotional distress, or $103,050[10] in total, is appropriate.

### III. Punitive Damages

Plaintiff requests $400,000 in punitive damages.  Punitive damages are warranted "when the defendant is found liable for conduct involving some element of outrage similar to that usually found in crime." Ditullio v. Boehm, 662 F.3d 1091, 1097 (9th Cir. 2011).  Punitive damages should be based on the "degree of reprehensibility of the defendant's conduct" and "reflect the enormity" of the offense.  Doe, 2012 WL 3834867, at *4-5.  The factors to be considered are whether the harm was physical or economic, whether defendants acted with reckless disregard of the victim's health and safety, whether the conduct was repeated, and whether the conduct was a result of malice or deceit as opposed to mere accident.  Id. at *4-5 (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 437 (2003)).

---

[10] This amount constitutes an award of $450 per day for a total of 229 days—81 days in Qatar and 138 days in the United States.

Courts routinely hold that trafficking in violation of the TVPRA is a particularly depraved act that warrants punitive damages. Id.; see also Tanedo v. E. Baton Rouge Parish Sch. Bd., 790 F. Supp. 2d 1134, 1145 (C.D. Cal. 2011) (noting "the TVPRA not only protects victims from the most heinous trafficking crimes, but also various additional types of fraud and extortion leading to forced labor"); Gurung, No. 10-CV-5086 (awarding $300,000 in punitive damages for a victim forced to work as a maid 16 hours per day, seven days per week for 40 months).

Here, as detailed supra, defendants acted intentionally and maliciously with reckless disregard for plaintiff's health when they trafficked her and forced her to work in their residences. This conduct is particularly egregious considering that defendant Al-Malki leveraged his diplomatic position to obtain a visa to bring plaintiff to the U.S. pursuant to a sham contact presented to the U.S. Embassy. (Butigan Aff. ¶¶ 17-19, 22.) Moreover, after plaintiff's escape, defendants tried to track her down by calling family and friends. (Id. at ¶¶ 42-43.) Defendants' repeated and intentional violations of the laws of the United States are sufficient justification to award plaintiff $400,000 in punitive damages.

## RECOMMENDATION

For the reasons outlined above, the undersigned recommends

26

that default judgment be entered in favor of plaintiff Christy A. Butigan against defendants Salah Mohammed K. A. Al-Malki and Salwa Awad M. Saeed, jointly and severally, in the principal amount of $533,667, consisting of $133,667 in compensatory damages and $400,000 in punitive damages.

<u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendants at the following address:

        Salah Mohammed K. A. Al-Malki
        Salwa Awad M. Saeed
        P.O. Box 2735
        Doha
        Qatar

                          /s/
                          _____
                          THERESA CARROLL BUCHANAN
                          UNITED STATES MAGISTRATE JUDGE

April 9, 2014
Alexandria, Virginia